396 So.2d 306 (1981)
Kenneth Dale RAINS, Plaintiff and Appellee,
v.
DIAMOND M. COMPANY et al., Defendants and Appellants.
No. 8014.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1981.
Rehearing Denied March 23, 1981.
Writ Refused May 1, 1981.
*308 Davis & Simmons, Kenneth N. Simmons, Many, for plaintiff-appellee-appellant.
Raggio, Cappel, Chozen & Berniard, Richard A. Chozen, Lake Charles, for defendant-appellee.
Allen, Gooch & Bourgeois, Arthur I. Robison, Lafayette, for defendant-appellant-appellee.
Before CULPEPPER, GUIDRY and CUTRER, JJ.
CULPEPPER, Judge.
Kenneth Dale Rains brings this action under the Jones Act, 46 U.S.C.A. Sec. 688 and General Maritime Law against Diamond M Company, his employer, for injuries sustained while working as a roustabout on a semi-submersible drilling rig located off the shore of Louisiana in the Gulf of Mexico. Joined as parties defendant are Marathon Oil Company, the company for whom the drilling operations were being performed, B. J. Hughes, Inc., furnisher of certain equipment on the rig, and Bobby Painter and Ricky Greer, two Diamond M employees.
The claim against defendant Ricky Greer was dismissed on a motion for directed verdict after presentation of plaintiff's case. After trial, the jury returned a verdict in favor of plaintiff and against the defendants, Diamond M, Marathon, and Bobby Painter for the sum of $350,000. Negligence was apportioned 80% to Diamond M, 15% to Marathon and 5% to Bobby Painter. The jury rejected plaintiff's claim against *309 Hughes. Diamond M, Marathon and Bobby Painter appealed. Plaintiff answered the appeal, seeking an increase in the award from $350,000 to $950,000, and judgment against B. J. Hughes, Inc. as well.
There are several issues: (1) Was the evidence sufficient to prove negligence on the part of Bobby Painter, foreman for Diamond M? (2) Can Bobby Painter, plaintiff's co-employee, be liable under the Jones Act? (3) Is Marathon liable, either under the Jones Act or General Maritime Law? (4) Is B. J. Hughes, Inc. liable? (5) Was plaintiff contributorily negligent? (6) Was the damage award excessive? (7) Were excessive costs taxed against defendants? (8) Were excessive expert witnesses' fees assessed against defendants? (9) Did the trial court err in refusing to allow evidence of false answers by jurors on voir dire at the motion for a new trial and also in refusing to grant a new trial?
GENERAL FACTS
The Diamond M rig, known as the "Century", was located approximately 130 miles off the coast of Louisiana in the Gulf. Pursuant to an offshore drilling contract entered into with Marathon, Diamond M furnished the drilling vessel, equipment and necessary personnel for drilling operations. The contract further provided that Diamond M had the authority to control and direct the details of the work. However, Marathon had personnel on board the Century during the drilling.
Plaintiff, 22 years of age, had been employed by Diamond M for approximately eight months. On the date of the accident, he was a member of a crew on the Century engaged in placing a casing hanger into an opening in the drill floor deck, known as a rat hole. The casing hanger, a hollow tube-like structure approximately six feet long and 13 inches in diameter, and weighing several hundred pounds, was hooked to a crane cable by the crew. The cable was run through the center of the casing hanger and attached to the end with a hook. Bobby Painter, operator of the crane located about 70 feet from the rat hole, lifted the casing hanger and moved it toward the hole. Plaintiff and other members of the crew directed Painter by hand signals and guided the casing hanger into the rat hole as it was being lowered by Painter. A problem developed when the casing hanger would not completely lower into position due to an obstruction in the hole. Painter raised the hanger a few inches and let it drop several times by its own weight. When this failed, the crew directed Painter to raise the casing hanger out of the rat hole. As the hanger was almost completely out of the hole, the hook somehow came loose from the bottom of the casing hanger. The casing hanger fell upon plaintiff, causing him severe injuries.
NEGLIGENCE OF BOBBY PAINTER AND DIAMOND M
We recognize at the outset our limited role in reviewing the sufficiency of the evidence. Although this court is constitutionally authorized to review both the law and the facts in civil cases, under Federal Law and jurisprudence, which we must follow in cases applying Federal statutes, the jury's finding of fact cannot be disturbed by an appellate court unless there is no reasonable evidentiary basis for the jury's conclusions. Trahan v. Gulf Crews, Inc., 260 La. 29, 255 So.2d 63 (1971) and cases cited therein.
The Jones Act grants to any seaman a cause of action for personal injury caused by negligence of his employer. 46 USCA, Sec. 688. Plaintiff's status as a seaman within the meaning of the Jones Act is not disputed. Also, there is no dispute that plaintiff was employed by Diamond M at the time of the accident.
As plaintiff's Jones Act employer, Diamond M was under a duty to provide plaintiff with a reasonably safe place to work. Spinks v. Chevron Oil Company, 507 F.2d 216 (5th Cir. 1975). This broad duty is such that if plaintiff can show his injuries were the result of even the slightest negligence of his employer, liability follows. Davis v. Hill Engineering, Inc., 549 F.2d 314 (5th Cir. 1977).
*310 Defendants argue plaintiff has failed to prove his injuries were caused by the negligence of any party. They offer no explanation for the cause of the accident. Defendants point to evidence that the procedure followed in installing the casing hanger had been used several times in the past by this same crew without mishap. Essentially, defendants argue it was an unavoidable accident, and that no one was negligent.
In its brief, Diamond M emphasizes the lack of evidence to pinpoint the exact cause of the hook becoming disengaged from the bottom of the casing hanger. Bobby Painter and the members of the crew who were at the rat hole testified that as Painter raised the casing hanger to a position where its bottom was about flush with the top of the rat hole, the hanger fell and struck plaintiff. Plaintiff testified he was told after the accident by Bobby Painter that the hook on the end of the cable struck the top of the rat hole and "sprung out". However, in previous deposition testimony, plaintiff stated he was told the hook bent. Under cross-examination at trial, plaintiff admitted he had no personal knowledge as to why the casing hanger fell. Arnold MacAlexander, a member of the crew, testified that when the bottom of the casing hanger came flush with the top of the rat hole the hook sprang loose somehow. In his accident report, Bobby Painter stated that "the hook simply hung on the edge" of the rat hole and came off. But, during trial, Painter admitted this was speculation on his part.
Under the Jones Act, a jury verdict may be sustained when there is evidence from which a jury might reasonably infer negligence. Sanford Bros. Boats, Inc. v. Vidrine, 412 F.2d 958 (5th Cir. 1969). In the present case, there is evidence from which the jury could have reasonably inferred negligence by Painter, the foreman for Diamond M. In the first place, there is evidence that the procedure being used was not reasonably safe. James B. Bison, an expert drilling consultant, testified he was thoroughly familiar with the assembly of casing hangers and had frequently supervised their installation, but that he had never seen nor used the procedure employed at the time of the accident. He suggested two safer methods. One was to attach a handling tool to the top of the hanger and tie the cable to the handling tool. The other method was also a procedure for attaching the cable to the top of the hanger. Bison prepared a diagram of these procedures, which was filed in evidence and observed by the jury. From Bison's testimony, the jury could have reasonably inferred the procedure being used by Diamond M was unsafe, that it was not customarily used in the industry, and that there were other safer procedures which Painter could and should have used.
Moreover, the evidence shows that Painter was in charge of the roustabout crew, that he had instructed the crew to use this procedure, and that they had used it several times before. If the procedure was unsafe, as Bison testified, then Painter was negligent in instructing the crew to use it.
Furthermore, the jury could have inferred that Painter was negligent in not taking sufficient precautions to see that the casing hanger would go down into the rat hole. Painter testified he did not measure the casing hanger and did not know that this rat hole had a false bottom which prevented the casing hanger from going all the way down.
We conclude there is sufficient evidence from which the jury could have inferred negligence by Painter, which negligence is of course imputed to his employer, Diamond M.
PAINTER'S LIABILITY
The jury found Painter was 5% negligent. This negligence is imputed to his employer, Diamond M, under the doctrine of respondeat superior. However, the jury's verdict is in error insofar as it holds Painter personally liable. Under the Jones Act, an employee-employer relationship is essential to recovery. Spinks v. Chevron, supra. Thus, Painter, as a co-employee of plaintiff, could not be liable under the Jones Act. There is no contention that Painter is liable under General Maritime Law. Accordingly, the claim against Painter must be dismissed.
*311 MARATHON'S LIABILITY
The question becomes more complex with respect to the liability of Marathon Oil Company. The negligence of Marathon was assessed by the jury at 15%. To prevail against this defendant under the Jones Act, plaintiff must prove Marathon was also his employer. While we recognize the possibility for a seaman to have more than one Jones Act employer, Spinks v. Chevron, supra, the evidence does not support such a finding in the present case.
This particular situation most frequently arises in the borrowed servant context. In order for plaintiff to be considered as an employee of Marathon, it would be necessary to show that Marathon exercised some form of control over plaintiff's activities. See Ruiz v. Shell Oil Company, 413 F.2d 310 (5th Cir. 1969). According to the testimony of several witnesses, Marathon had one or two employees on the Century on the day plaintiff was injured. Under the drilling contract, Marathon furnished equipment and personnel for certain services to be performed. However, we find no evidence of control or right to control by Marathon or its personnel of the job being performed by plaintiff at the time of the accident. To the contrary, all of the evidence shows that Diamond M was solely in control of this aspect of the job. We conclude there was no reasonable evidentiary basis on which the jury could have found that Marathon was plaintiff's Jones Act employer. Thus, there can be no liability by Marathon under the Jones Act.
Nor do we find that Marathon could be liable under General Maritime Law. From his pleadings and brief on appeal, it is clear that plaintiff is relying solely on Jones Act negligence as the theoretical basis for his cause of action. Plaintiff does not contend that Marathon was either the owner or the operator of the vessel.
LIABILITY OF HUGHES
As we interpret the facts, the Diamond M crew was installing the casing hanger so that a piece of B. J. Hughes' equipment could be attached to the top portion of the casing hanger, known as a Vetco head. It is undisputed that an employee of B. J. Hughes, Billy Griffin, was present while the Diamond M crew was installing the casing hanger. One crew member, Jerry Durr, testified that Griffin was supervising the operation. Other members of the crew testified that Griffin was not in charge but was merely lending a hand so that he could attach his tool after the casing hanger was in place. As with the case of Marathon, the requisite degree of control necessary for plaintiff to be considered a borrowed servant of the defendant, B. J. Hughes, is simply lacking. We find no error in the jury's finding on this issue.
PLAINTIFF'S CONTRIBUTORY NEGLIGENCE
The defendants alternatively contend that plaintiff's right to recover damages for his injuries should be reduced due to his own negligence. They argue that plaintiff, as a lead worker, failed to insure that the casing hanger was properly attached to the cable, and that he was negligent in deciding to remove the casing hanger when it would not position properly. This argument is without merit. Plaintiff was performing his duty in the manner in which he had been instructed by Painter. Furthermore, even assuming plaintiff made the decision himself to raise the casing hanger, he could not have foreseen that the hook would spring loose. We find no error in the jury's conclusion that plaintiff was not contributorily negligent.
SUMMARY OF LIABILITY
Since Diamond M is the only Jones Act employer, since neither Marathon nor Hughes is liable under the Jones Act or under General Maritime Law, and since the plaintiff is not contributorily negligent, Diamond M is solely liable for all of plaintiff's damages.
EXCESSIVENESS OF THE JURY AWARD
Immediately following plaintiff's accident, he was flown by helicopter to Morgan City. He had severe internal bleeding, *312 causing him to go into shock. His spleen was surgically removed and his liver repaired. Plaintiff also sustained nine broken ribs, a punctured lung, and fractures of two lumbar vertebrae, the transverse processes of L3 and L4. Several days after the initial surgery, Dr. Askew performed an emergency operation to remove blood from the chest cavity. Plaintiff remained hospitalized for 19 days.
After returning home to recuperate, plaintiff began experiencing chest pains and nausea and was vomiting blood. He was admitted to the Schumpert Medical Center at Shreveport, where surgery was performed to remove his gallbladder, which had become infected. The hospital stay this time was 17 days. After he was released, he continued having gastric problems and was readmitted to the hospital. Diagnosis revealed that plaintiff had a severe bleeding ulcer, for which treatment followed. He was finally released from Schumpert six days later.
Dr. William Wilder, a specialist in gastroenterology, testified that plaintiff's gallbladder problems were the result of the injury to the liver. He was also of the opinion that plaintiff's ulcer was due to the culmination of stress from his previous injuries and surgery.
Following his recuperation, plaintiff sought employment as a welder's helper but soon began experiencing back pains. Dr. Zum Brunnen, an orthopedic surgeon, examined plaintiff for his back complaints. X-rays revealed the fractures of the two transverse processes. Dr. Brunnen testified that the bone fractures would never reconnect but would immobilize to a degree with scar tissue. Dr. Brunnen predicted that plaintiff would have a permanent problem with his back and would be unable to work as a roustabout or engage in any other occupation involving heavy manual labor. He did testify that plaintiff should be able to lead a normal life in terms of recreation and could do some moderate work.
Dr. Daniel Kingsley, also an orthopedist, gave plaintiff a more favorable prognosis. According to Dr. Kingsley, plaintiff would be able to return to his former job as a roustabout after undergoing certain physical rehabilitation therapy to loosen up the stiffness in his back.
Dr. Randolph Rice, an economist, offered testimony concerning lost wages. Using an income growth factor of 8½%, which included inflation, Dr. Rice estimated plaintiff's future wages, based on a 38.4 years work-life expectancy, to be $649,824. Subtracting projected future earnings at the minimum wage level, which plaintiff would probably earn in his disabled condition, Dr. Rice determined that the total future loss of wages would be $387,966.
Defendant contends it was error to include inflation as a factor in determining future wage loss. The rule in the Fifth Circuit, established in Johnson v. Penrod Drilling Company, 510 F.2d 234 (5th Cir. 1975), was that inflation and cost of living increases should not be used to determine future pecuniary losses due to the speculative nature of these factors. Recently, however, in Norfolk & W. Ry. Company v. Leipelt, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), these very factors were approved by the Supreme Court in the determination of future wage losses. This recent ruling of the Supreme Court is controlling.
Jury awards under Maritime Law and the Jones Act "must stand unless the appellate courts find there is no law and no evidence to sustain them, rendering them, as some courts have put it, so excessive as to be obviously punitive, motivated by prejudice, passion, partiality or corruption." Trahan v. Gulf Crews, Inc., supra (255 So.2d at 70). In the present case, the total award fixed by the jury, including general damages for pain and suffering, was less than the projected loss of future earnings calculated by Dr. Rice. The jury apparently was not entirely convinced either by the testimony of Dr. Brunnen or Dr. Kingsley concerning plaintiff's prospect of future employment. We have no doubt that plaintiff sustained grievous injuries as a result of the accident and underwent a *313 lengthy and painful recuperation. In view of the conflicting medical testimony as to plaintiff's prognosis and residual disability, however, we hesitate either to increase or decrease the awards by the jury. Under the law and evidence presented, we cannot say that the award was so low as to shock the conscience or so excessive as to be punitive.
The district court awarded plaintiff pre-judgment interest from the date of judicial demand. Appellants contend that interest should run only from date of judgment. We agree. Several federal decisions have denied pre-judgment interest in Jones Act claims brought on the law side. Barrios v. Louisiana Construction Material Company, 465 F.2d 1157 (5th Cir. 1972), Sanders Bros. Boats, Inc. v. Vidrine, supra. This court has also specifically ruled on this point. See Morris v. Trans-World Drilling Company, 365 So.2d 46 (La.App.1978). Accordingly, the trial judge was in error in including pre-judgment interest. Whether pre-judgment interest is allowed under General Maritime Law is not before us.
EXCESSIVENESS OF COSTS
Defendants-appellants contend the following items assessed against them as costs of court are either excessive or should not have been allowed:

"a. 1/15/80 Susan
 FlanaryCt.Rep. (Pd. by
 & S) $ 249.50
b. 2/5/80 M & S
 Ct.Rep.Service (Pd. by D
 S) 21.70
c. 2/5/80 Womack Ct.Rep.
 (Pd. by D & S) 187.43
d. 3/24/80 Susan Flanary
 (Pd. by D & S) 249.50
e. 3/31/80 Dr. Fred L. Price
 (Pd. by D & S) 1,027.76
f. 3/31/80 Internal Med.
 Asso. (Dr. Langford &
 Wilder) (Pd. by D & S) 1,000.00
g. 4/1/80 Harrahan
 Rep.Service 358.11
h. 4/1/80 Jack L. Grindle 500.00
i. 4/1/80 W. M. Wilder 1,500.00
j. 4/1/80 Fred L. Price 1,527.76
k. 4/1/80 J. Randolph Rice
 (Pd. by D & S) 780.00
l. 4/1/80 James Bison 375.00"

The above list of costs to which appellants object is taken from the statement of costs totaling $12,769 mailed by the clerk of the district court to counsel for Diamond M on April 2, 1980, which was the same date that the judgment appealed was rendered and signed by the district judge. The clerk of court's statement for costs is not part of the record before us. Counsel for Diamond M has attached a copy of the statement to his brief filed in this Court. On the statement, the notation "Paid by D & S", apparently means that this item was paid by Davis and Simmons, attorneys for the plaintiff.
Appellants raise several serious questions concerning the above listed items to which they object. For instance, they state in their brief that the January 15, 1980 charge by Susan Flanary in the sum of $249.50 and the March 24, 1980 charge by Susan Flanary for $249.50 are double charges for discovery depositions by five witnesses, and that only one of these depositions was introduced in evidence. Appellants point to the statute, LSA-R.S. 13:4533, and to jurisprudence, Parish v. Bill Watson Ford, Inc., 354 So.2d 727 (La.App. 4th Cir. 1978), that the costs of discovery depositions not used at trial may not be charged against the party cast.
Also, appellants raise a serious question as to the March 31, 1980, payments by plaintiff's attorneys to Dr. Fred L. Price in the sum of $1,027 and to Internal Medical Association (Drs. Langford & Wilder) in the sum of $1,000. In their brief, appellants state this case was initially fixed for trial on February 6, 1980 but was continued and refixed for trial on March 24, 1980, and that these two items represent the charges of Dr. Price and of Dr. Wilder respectively for time which they say they set aside on their calendars for the trial on February 6. Appellants say there was no trial on February 6, 1980, and they cite jurisprudence for the rule that no expert witness fee for a court appearance can be assessed as costs where no appearance by the expert at a trial took place. See Gaspard v. Aetna Insurance *314 Company, 390 So.2d 243 (La.App. 3rd Cir. 1980) and State, Department of Highways v. Salemi, 193 So.2d 252 (La.1967).
Appellants also contend that some of the expert medical witness fees fixed by the trial judge in his judgment are grossly excessive, as for instance the April 1, 1980 fee of Dr. Wilder in the sum of $1,500 and the April 1, 1980 fee of Dr. Price in the sum of $1,527. These two physicians are orthopedic surgeons who traveled from Shreveport to Many on the date of trial, but the record shows the trial was interrupted and they were permitted to testify when they arrived, and that their testimony required little or no preparation. These fees may indeed be excessive under LSA-R.S. 13:3666 which provides the criteria for fixing the amount of expert witness fees is "the value of time employed and the degree of learning or skill required."
In the present case we do not have sufficient evidence in the record before us to determine the issues raised by appellants as to the costs to which they object. We faced a similar situation in State, Department of Highways v. Moresi, 189 So.2d 292 (La.App. 3rd Cir. 1966), where we held:
"Often, for convenience and to avoid unnecessary repetition in court appearances, the amount and reasonableness of the expert's fee is determined by their testimony at the time they testify on the merits. However, as provided by LSA-C. C.P. Art. 1920, costs "may be taxed by a rule to show cause" incidental and subsequent to the original proceedings. See Succession of Franz, 242 La. 875, 139 So.2d 216 and (related case) 236 La. 781, 109 So.2d 92; also, Foster v. Stewart, La.App. 1 Cir., 161 So.2d 334. In fact, in the jurisprudence prior to the enactment of the 1960 Code of Civil Procedure, there are expressions that in ordinary civil suits expert fees and other costs should be fixed by the subsequent rule to show cause rather than by the judgment on the merits. Daly v. Abramson, La.App. 2 Cir., 117 So.2d 772, 781 (syllabus 11); Randazzo v. Lucas, La.App.Orl., 106 So.2d 490, 496-97 (syllabus 11).
Under all the circumstances, we think the interests of fairness will be served in the respect of court costs incurred by the landowner if we set aside the fixing of the expert fees by the trial court, in contemplation that same will be fixed by a rule to show cause if not agreed upon by the parties."
In the present case also we think the interest of fairness will be best served if we set aside the fixing of the expert witness fees by the trial court and reserve to the defendant-appellant cast the right to file a rule to fix both the expert witness fees and all other costs to which the defendant cast objects and upon which the parties are unable to agree.
MOTION FOR A NEW TRIAL
Defendants, Diamond M, Marathon and Painter, filed a motion for a new trial, alleging that certain jury misconduct prevented these defendants from obtaining a fair and impartial trial. The complaint made by counsel for appellants is that based on an affidavit made by one of the jurors subsequent to the trial, counsel for these defendants became aware that two weeks before the trial one of plaintiff's counsel had passed a mortgage and sale for the foreman of the jury. Defendants' counsel also was informed that another juror was personally acquainted with plaintiff, while a third juror was related by marriage to one of plaintiff's counsel. Although pertinent questions were directed to each prospective juror, none of these essential facts were elicited on the voir dire examinations.
At the hearing for a new trial, defendants' counsel attempted to examine these jurors as to these matters. Relying on a recent Fourth Circuit decision, George v. Koehler, (La.App. 4th Cir. 1980), the trial judge refused to allow any testimony by these jurors.
In George v. Koehler, supra, the appellants contended that two of the jurors concealed on voir dire examination certain facts that would have led to possible challenges for cause and peremptory challenges. Although the nature of the information withheld by these jurors was not mentioned, *315 the court found that the jurors did not clearly understand the extent of information to be given in response to the attorney's questions. Referring to Article 775 of the Code of Criminal Procedure, which states that a mistrial may be ordered when false statements of a juror on the voir dire prevent a fair trial, the court concluded no injustice or prejudice resulted from the information withheld.
We are aware of the general rule which prohibits the admissibility of affidavits or other testimony of jurors to impeach their own verdict. Lachney v. Jones, 373 So.2d 595 (La.App. 3rd Cir. 1979), Washington v. Lake City Beverage, Inc., 352 So.2d 717 (La.App. 3rd Cir. 1977), Blandino v. Brown Erection Company, Inc., 341 So.2d 577 (La.App. 2d Cir. 1977). We agree with defendants that a distinction exists between impeaching the jury verdict and attempting to ascertain whether the jurors responded truthfully on voir dire. In this regard, we feel the trial judge should have admitted the testimony which may have indicated incomplete responses on voir dire. However, as in the George v. Koehler decision, we cannot say the information withheld necessarily precluded defendants from obtaining a fair and impartial trial. Our review of the record as a whole, including the voir dire examination, convinces us that the jurors based their verdict solely on the evidence presented rather than on extrinsic matters.
DECREE
For the reasons assigned, the judgment appealed is reversed in part, amended in part and affirmed in part as follows:
That portion of the judgment which finds Marathon Oil Company and Bobby Painter liable to the plaintiff is reversed and set aside, and it is now decreed that all of plaintiff's demands against Marathon Oil Company and Bobby Painter be dismissed.
That portion of the judgment which apportions to Diamond M Company 80% of the negligence, to Marathon Oil Company 15% of the negligence and to Bobby Painter 5% of the negligence is reversed and set aside, and it is now ordered, adjudged and decreed that the defendant, Diamond M Company, is solely responsible for all damages suffered by the plaintiff.
That portion of the judgment which awards plaintiff legal interest on the sum of $350,000 from date of judicial demand until paid is reversed and set aside, and it is now decreed that legal interest on the sum of $350,000 be paid from the date of the judgment appealed herein until paid.
That portion of the judgment which fixes the fees of expert witnesses is reversed, and there is reserved to the defendant, Diamond M Company, the right to file within 30 days after this judgment becomes final a rule to show cause why the fees fixed by the district judge should not be reduced or disallowed, and in the absence of such a rule being filed by Diamond M within said 30-day period, the expert witness fees fixed by the trial judge are affirmed.
That portion of the judgment which assesses all costs against Diamond M Company, Marathon Oil Company and Bobby Painter in proportion to their negligence, is reversed and set aside, and it is now decreed that all costs in the trial court be assessed against the defendant, Diamond M Company, reserving however to Diamond M Company the right to file within 30 days after this judgment becomes final a rule to show cause why any of the costs assessed should not be changed or disallowed, but in the absence of Diamond M filing such a rule within said 30-day period, the costs assessed are affirmed.
Otherwise than as herein reversed or amended, the judgment appealed is affirmed. All costs of this appeal are assessed against Diamond M Company.
REVERSED IN PART, AMENDED IN PART AND AFFIRMED IN PART.