522 So.2d 641 (1988)
Tommy HUFF
v.
COMPASS NAVIGATION, INC.
No. CA-8234.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 1988.
Rehearing Denied April 13, 1988.
Writ Denied June 2, 1988.
*642 Daniel J. Caruso, Kenneth R. Bowen of Simon, Peragine, Smith & Redrearn, New Orleans, for appellant.
Paul N. Vance, Brian D. Wallace, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for appellee.
Before BYRNES, WARD and WILLIAMS, JJ.
BYRNES, Judge.
Appellant, Tommy Huff, seeks reversal of a jury verdict rejecting his claims against his employer, Compass Navigation Inc., for damages allegedly caused by Compass's negligence and/or the unseaworthiness of the M/V CHARLIE C. Huff was employed by Compass as a deck hand and assigned to duty aboard the M/V CHARLIE C. One day into the ship's voyage, Huff allegedly slipped and fell from the *643 second floor landing of an interior stairwell and injured his back.
Pursuant to general maritime law, Compass paid Huff maintenance in the amount of $15.00/day. Compass also paid the bill for Huff's initial treatment at Singing River Hospital in Mississippi as part of its maintenance and cure obligation. Upon his return to New Orleans, Huff consulted a neurosurgeon, Dr. Jarrott. A CAT scan ordered by Dr. Jarrott revealed a slight herniation to the L5-S1 disc and some minor bulging of the L4-5 disc. When Huff's pain did not lessen, Dr. Jarrott admitted him to Montelepre Hospital for conservative treatment. When this failed to alleviate the pain, a myleogram and discogram were performed. These tests confirmed the presence of a bulging disc. Because conservative treatment had been unsuccessful and Huff was in great pain, Dr. Jarrott decided to perform a laminectomy at the L5-S1 level in October, 1985. During this procedure he removed most of the disc material at the L4-5 level which was found to be ruptured. Although Huff's condition appeared to improve over the next few months, by February, 1986 Dr. Jarrott diagnosed him as suffering from recurrent disc syndrome (a further degeneration of the disc).
At Compass's direction, Huff then consulted Dr. Williams, an orthopedic surgeon. After conducting his own tests, Dr. Williams concurred in Dr. Jarrott's diagnosis of recurrent disc syndrome. Huff's pain continued, and in March 1986 Dr. Williams performed a second laminectomy at the L5-S1 and L4-5 levels, the same area Dr. Jarrott had operated on five months earlier. Dr. Williams removed additional disc material as well as scar tissue from the first operation. He then fused both levels to stabilize the back and prevent further degeneration. After a course of rehabilitative therapy, Huff was discharged by Dr. Williams on October 22, 1986 as having reached maximum medical cure. He was assigned a 30% permanent partial disability and advised not to return to work as a deck hand.
Huff was still experiencing pain at that point so he returned to Dr. Jarrott for further consultation. Based on Huff's complaints, Dr. Jarrott ordered a CAT scan which revealed fibrosis and scar tissue normally associated with a disc fusion. Dr. Jarrott was of the opinion that further tests were in order and that Huff would likely require future surgery to decompress the nerves affected by the scar tissue and fibrosis. Compass refused to pay for the tests Dr. Jarrott recommended or to authorize further treatment.
Huff sued Compass under the Jones Act, 46 U.S.C. § 688, and general maritime law relating to unseaworthiness and maintenance and cure. His Jones Act claim was based on allegations that Compass failed to provide him with a safe place to work. Basically, Huff alleged that the steps from which he fell were unsafe in design and were improperly maintained.
These same allegations formed the basis of Huff's claim that the M/V CHARLIE C was unseaworthy. Huff's last claim was for maintenance and cure expenses which he alleged Compass had arbitrarily and capriciously refused to pay.
At the close of trial, Huff moved for a directed verdict on all issues. His motion was denied and the case was submitted to the jury. In response to interrogatories the jury made the following findings: 1) that Huff had an accident on board the M/V CHARLIE C on August 24, 1985 for which Compass might be responsible (emphasis added); 2) that Compass was guilty of no negligence whatsoever under the Jones Act; 3) that the M/V CHARLIE C was not unseaworthy and; 4) that Huff received all the maintenance and cure benefits to which he was entitled. After Huff's motion for JNOV or a New Trial were denied this appeal was perfected.
Huff argues that the jury's findings that the M/V CHARLIE C was seaworthy and that Compass was not guilty of negligence were contrary to the law and evidence. He also argues that the jury erred by not finding that he was entitled to additional maintenance and cure benefits. As to the trial judge, Huff contends that he erred by *644 allowing evidence of Huff's post-accident fights to be admitted, thereby prejudicing the jury against him. Finally, Huff contends that the trial judge erred by not directing a verdict in his favor on all issues and by denying his motions for JNOV or New Trial. We first address the Jones Act and unseaworthiness claims.

SEAWORTHINESS
It is a well established principle of admiralty law that a vessel owner warrants that his vessel is seaworthy. A seaworthy vessel is one that is reasonably fit for its intended use. The duty of the vessel owner to provide a seaworthy vessel is absolute in the sense that actual or constructive knowledge by the owner of the unseaworthy condition is not necessary to support liability. Likewise, no showing of due diligence or lack of negligence by the vessel owner can defeat a claim based on unseaworthiness. Mitchell v. Trawler Racer Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). This is because unseaworthiness is a condition of the vessel, and how that condition arises has been deemed irrelevant to the owner's liability for allowing such a condition to exist. See Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971). In order for a plaintiff to recover on an unseaworthiness claim he must not only prove that the vessel was unseaworthy, he must also show that the unseaworthy condition was the proximate (that is the direct and substantial) cause of his injury. Alverez v. J. Ray McDermott & Co., 674 F.2d 1037 (5th Cir.1982).
In the present case, Huff attempted to show by the testimony of a safety expert that the steps from which he allegedly fell were defective and the vessel therefore unseaworthy. This expert examined the steps and was of the opinion that the following defects existed:
1. There should have been handrails on both sides of the stairs instead of just one handrail which ended 41 inches below the landing from which Huff claimed he fell.
2. The landing itself was covered with vinyl flooring which was waxed with ordinary household wax rather than a commercial product with anti-skid properties.
3. The riser between the last step and the landing was 1¼ inches shorter then the risers on the lower steps.
Huff contends that because no other expert testified, these defects were proven by uncontradicted evidence. We disagree. It is true that no other expert testified. It is also true that the objective facts to which Huff's expert testified were not contradicted. No one challenged his measurement of the riser height or stair rail length. Nor were his observations as to the composition of the landing floor or the absence of a second handrail challenged. However, acceptance of these uncontradicted objective facts did not compel the jury to accept the subjective opinion which this expert reached. The jury, as always, was free to assign whatever weight it felt was appropriate to this expert's opinion in light of all the evidence presented at trial.
More importantly, our review of the jury's findings in this maritime case is severely limited by Federal law. This court would ordinarily have the authority under our state constitution to review both facts and law in civil cases. However under Federal law and jurisprudence, which we must apply when deciding cases under Federal statutes or maritime law, the jury's findings of fact cannot be disturbed on appeal unless there is no reasonable evidentiary basis for them. Ellender v. Texaco Inc., 425 So.2d 291 (La.App. 3rd Cir.1982), Rains v. Diamond M. Co., 396 So.2d 306 (La.App. 3rd Cir.1981), Trahan v. Gulf Crews Inc., 255 So.2d 63 (La.1971). In Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946), the U.S. Supreme Court expressed this standard as follows:
Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where ... there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes *645 apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.
Applying this stringent and restrictive standard of review to the present case, we cannot say that the jury's factual conclusions regarding the seaworthiness of the M/V CHARLIE C were so unsupported by the evidence as to warrant reversal by this court. In addition to the testimony of Huff's safety expert, the jury was able to view a photograph of the stairway and hear the testimony of the captain and other crew members of the vessel. In the course of his testimony the captain pointed out that even though the handrail on the steps from which Huff fell did not extend to the landing, the bulkhead provided a handhold at that point. Moreover, it was established without dispute that the stairs themselves (as opposed to the landing) were constructed of steel with an anti-skid pattern.
The standard for judging seaworthiness is not perfection, but reasonable fitness. Thus, even if the jurors thought some defects existed in the stairs, they were not obliged to find them unseaworthy. The jury was free to draw any conclusion which had a reasonable evidentiary basis. Its ultimate conclusion that the vessel was not unseaworthy could have been based on its observation of the photograph of the stairs, its evaluation of the credibility of Huff's testimony as well as that of the captain and crew members of the M/V CHARLIE C, and the weight it assigned to the opinion of Huff's safety expert. No doubt other triers of fact could have reached other conclusions. However, our task is not to second guess the jury. As the U.S. Supreme Court held in Tennant v. Peoria & P.U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520 (1944):
The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inference, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. (citations ommitted)
That conclusion whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges felt that other results are more reasonable. 64 S.Ct. at 412.
The jury's finding that the M/V CHARLIE C was not unseaworthy is therefore affirmed.

JONES ACT
We now address Huff's contention that the jury erred by not finding Compass liable under the Jones Act. (46 U.S.C. § 688). The facts alleged to support this claim were the same as in the unseaworthiness claim; namely that the steps were defective. An employer's duty under the Jones Act to provide a safe place to work has been interpreted to mean a place where the employee can work without exposure to an unreasonable risk of harm. Failure to exercise reasonable care to fulfill this duty is negligence. Under the Jones Act, if this negligence plays even the slightest role in causing the employee's injury, the employer is liable. Ferguson v. Moore McCormack Lines, Inc., 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511 (1957).
In the present case the jury, after hearing all the evidence, concluded that Compass was not negligent and thus rejected Huff's claim under the Jones Act. The standard of review as to the jury's findings of fact in Jones Act cases is the same as in unseaworthiness cases; the jury's findings cannot be disturbed on appeal unless there is a complete absence of probative facts to support those findings. Rivers v. Schlumberger Well Surveying Corp., 389 So.2d 807 (La.App. 3rd Cir.1980).
If the jury concluded, as a matter of fact, that the evidence did not prove a breach of Compass's absolute duty to provide a seaworthy *646 vessel, it is not surprising that the same jury also concluded that Compass was not negligent; particularly when no additional evidence of negligence was introduced.
We therefore affirm the finding that Compass was not liable under the Jones Act.

MAINTENANCE AND CURE
Huff next contends that he was entitled to additional maintenance and cure benefits which Compass unreasonably refused to pay. He seeks reversal of the jury's finding to the contrary and asks that punitive damages be imposed on Compass for its arbitrary and capricious refusal to pay the benefits to which he claims entitlement.
Maintenance and cure is the obligation of an employer under general maritime law to pay certain benefits to a seaman who suffers injury or sickness while in the service of the ship. Gauthier v. Crosby Service, Inc., 499 F.Supp. 295 (E.D.La. 1980). Hebert v. Aetna Casualty & Surety Co., 400 So.2d 695 (La.App. 1st. Cir. 1981). Maintenance is a daily stipend for living expenses. Cure is the payment of medical expenses. The employer's obligation to pay maintenance and cure continues until the seaman reaches maximum medical cure; that is until further treatment would not improve his condition. Pelotto v. L & N Towing Co., 604 F.2d 396 (5th Cir.1979).
In the present case, Compass paid Huff maintenance from the date of his injury through October 22, 1986 when Dr. Williams discharged him as having reached maximum medical cure. Compass paid the bill for Huff's initial hospitalization at Singing River Hospital in Mississippi. Compass also paid for all treatment by Dr. Williams (the physician to whom Compass referred Huff for a second opinion), including the surgery performed in March 1986. However, prior to seeing Dr. Williams, Huff had been treated by Dr. Jarrott, a physician of his own choosing. It was Dr. Jarrott who first saw Huff when he returned from Mississippi. It was Dr. Jarrott who first diagnosed Huff's back condition and it was Dr. Jarrott who first performed surgery on Huff's back in an attempt to repair the problem. Compass has consistently refused to pay the hospital bill for this first surgery. Compass has also refused to pay part of Dr. Jarrott's bill and a bill for diagnostic testing performed in January, 1987.
At trial Dr. Williams testified that in his opinion Dr. Jarrott's initial operation on Huff's back was appropriate and justified by the facts. Compass never questioned the necessity for the operation performed by Dr. Williams, and apparently relied on his opinion. If Compass believed Dr. Williams and agreed that the second operation was necessary, it is difficult to see how the refusal to pay for the first surgery can be justified. The exact same area of the back was involved in both operations. The same history was given to both doctors by Huff. Compass apparently trusted Dr. Williams' opinion (and Huff's story) enough to agree to pay for the second operation. In light of these facts, Compass's argument that the first surgery was not the necessary result of the accident must be rejected. The obligation to pay maintenance and cure applies to any injury or illness which occurs or manifests itself while the seaman is in the service of the vessel. The injury or illness need not result from or be caused by the seaman's employment. Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938). Huff's condition manifested itself at sea, on board the ship. Thus, there can be no doubt that he was in the service of the ship at the time.
If causation is not relevant to maintenance and cure benefits, it makes no difference what the jury thought about how the accident occurred. Compass does not seriously argue that Huff intentionally concealed a pre-existing back condition. Moreover, the jury's affirmative finding that Huff in fact suffered an accident effectively precludes the argument that he intentionally inflicted harm on himself. Intentional acts are simply not accidental. Any jury is capable of making this distinction.
*647 There seems to be no doubt that at least some symptoms of Huff's back condition manifested themselves while he was in the service of his ship. There certainly is not enough evidence to support a contrary conclusion. Once this proposition is accepted, it becomes apparent that the jury erred by not allowing Huff to recover the cost of the first surgery. Even if the accident did not cause the condition, the condition manifested itself while Huff was in the service of the M/V CHARLIE C. This is all the law requires. Moreover, ambiguities or doubts in the application of the law of maintenance and cure should be resolved in favor of the seaman. Gaspard v. Taylor Diving and Salvage Co., Inc., 649 F.2d 372, (5th Cir.1981), cert. denied 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982).
For the foregoing reasons, we reverse the jury's finding that Huff had received all the maintenance and cure benefits to which he was entitled. Clearly, Compass should have paid for the operation performed by Dr. Jarrott in October, 1985. The evidence before the jury simply could not justify the conclusion that this bill was not Compass's responsibility under its duty to provide maintenance and cure. However, the other items of maintenance and cure which Huff claims are owed him present a slightly different problem.
Huff claims that he should receive additional benefits based on Dr. Jarrott's opinion that he had not reached maximum medical cure because of continued pain, possibly due to nerve compression. Dr. Williams had examined Huff a few weeks before Dr. Jarrott and concluded that Huff had reached maximum cure. The question then becomes which doctor to believe. This task was left to the jury, which apparently chose to give more weight to Dr. Williams' opinion. Having carefully examined the record, we cannot say that the facts and inferences point so overwhelmingly in favor of Huff's position that reasonable men could not decide against him.
When it appears that further treatment will merely relieve pain but not otherwise improve a seaman's physical condition, it is appropriate to find that the point of maximum cure has been reached. Pelotto v. L & N Towing Co., supra. In the present case, it was not unreasonable for the jury to find that the treatment recommended by Dr. Jarrott was not going to improve Huff's physical condition, but was only going to alleviate pain. Moreover, given the evidence of Huff's activities after surgery the jury could also have reasonably concluded that whatever problem Huff is presently suffering was caused by those activities, and were not associated with his accident on the M/V CHARLIE C. Under these circumstances, we decline to substitute our evaluation of the medical testimony for the jury's and affirm the finding that Compass is not obliged to pay medical expenses and maintenance benefits associated with a third operation or with Dr. Jarrott's continued treatment.
The next element of maintenance and cure benefits which Huff claims is due to him is the cost of vocational rehabilitation. In our opinion this service is not an element of Compass's maintenance and cure obligation. Vocational rehabilitation is not medical treatment like physical therapyit is job training. Thus, unless Compass was held liable for Huff's injury under the doctrine of unseaworthiness or the Jones Act where the full range of damages are recoverable, the jury properly denied this element of Huff's claim.
Finally, we address the issue of punitive damages and attorneys fees. If an employer's refusal to pay maintenance and cure is willful and arbitrary, these damages may be awarded. Holmes v. J. Ray McDermott Co., 734 F.2d 1110 (5th Cir.1984). Here, we have determined that the medical costs associated with Huff's first operation were the only items of maintenance and cure which Compass was not justified in refusing to pay. As discussed earlier in this opinion, Compass's refusal appears illogical in light of its willingness to pay for a second operation on the same disc by a doctor who (albeit after the fact) concurred in the decision of the first doctor to operate. It certainly appears arbitrary to pay for the second operation but not the first, particularly when most of the facts *648 which Compass claims justified its refusal were known at the time the second operation was authorized and paid for. Under these circumstances punitive damages should have been awarded. Under the authority granted to us by C.C.P. Art. 2082 and 2164 to render any judgment which is just upon the record, we hereby fix punitive damages at $5,000.00.
As to attorneys fees, we have been unable to find any evidence in the record regarding the appropriate amount of such fees. Under applicable federal jurisprudence this lack of evidence precludes an award. Holmes v. J. Ray McDermott and Co., supra. See also Reed v. Seacoast Products, Inc., 458 So.2d 971 (La.App. 3rd. Cir.1984).

EVIDENTIARY RULING
Huff claims that the court erred by denying his Motion In Limine which sought to exclude evidence of three fights in which Huff was involved after his operations. He argues that the circumstances surrounding those fights were not relevant and prejudiced the jury against him. We disagree. Huff's conduct after surgery was certainly relevant to his claim for continued maintenance and cure. If his post operative conduct rather than his original accident was responsible for his continued pain, that would have a bearing on his entitlement to continued maintenance and cure benefits. Moreover, we are most reluctant to interfere with a trial court's great discretion in deciding questions of admissibility. Having reviewed the record, we are of the opinion that the probative value of the objected to evidence was not substantially outweighed by the danger of unfair prejudice. We therefore affirm the trial court's ruling.
Finally, we have reviewed the trial court's refusal to grant Huff's motions for directed verdict, JNOV and New Trial. For the reasons already discussed, we hold that the trial court properly denied all these motions as to the seaworthiness and Jones Act claims. However, as to the maintenance and cure claim, a partial directed verdict or JNOV should have been entered holding Compass liable for the cost of the October, 1985 surgery and for that portion of Dr. Jarrot's unpaid bill which relates to treatment up to October 22, 1986 when Dr. Williams concluded that Huff had reached maximum medical cure. To this extent, the judgment of the trial court is reversed. Costs of this appeal are to be divided equally between the parties.
AFFIRMED IN PART AND REVERSED IN PART.