551 So.2d 1363 (1989)
Ray PITTS, Jr., et al., Plaintiffs-Appellants,
v.
Terry BAILES, et al., Defendants-Appellees.
No. 88-663.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1989.
Rehearing Denied November 7, 1989.
Writ Denied November 17, 1989 and January 19, 1990.
*1367 Keaty & Keaty, Robert B. Keaty, Thomas S. Keaty, Lafayette, J. Robert Wooley, Baton Rouge, for plaintiffs-appellants.
John Hoychick, Jr., Rayville, Gold, Weems, Dee Drell, Percy, Smith, Steven C. Graalman, Alexandria, Dan E. West, Baton Rouge, Sessions, Fishman, James Ryan, Peter Title, New Orleans, Kenneth Barnette, John C. Young, Baton Rouge, C. Michael Hill, Lafayette, Henry Lemoine, Pineville, W.T. Armitage, Jr., Alexandria, for defendants-appellees.
Before GUIDRY, LABORDE and KNOLL, JJ.
KNOLL, Judge.
Ray Pitts, Jr. and his parents, Ray Pitts, Sr. and Rena Pitts, appeal from the trial court's denial of their motions for a new trial and judgment notwithstanding the verdict (JNOV). In the post-trial motions, Ray Pitts, Jr., alleging numerous trial errors, sought the reversal of several liability determinations and an increase in quantum; his parents also asked the trial court to overturn the jury's denial of their claim for loss of consortium. In its denial of the Pitts' post-trial motions, the trial court sustained the jury's quantum award of $761,000, finding no merit to the Pitts' contentions that there was jury misconduct which prevented them from reaching a fair and impartial verdict, and that the motion for JNOV was improper because reasonable minds could have differed on the appropriate amount of damages.
The Pitts contend on appeal that: (1) jury misconduct prevented them from receiving a fair and impartial verdict; (2) the testimony of Dr. Kenneth Boudreaux, an economist who testified for the defense, was prejudicial because his answers were unresponsive and he referred to collateral sources of income which should not have been allowed; (3) the jury intended to award Ray Pitts, Jr., $761,000 in excess of the amount he earlier received in settlement; (4) the trial court erroneously concluded *1368 that the Parish of Concordia and State of Louisiana were not liable because of a defective road design; (5) the trial court erroneously granted a directed verdict in favor of Mutual Fire, Marine and Inland Insurance Company, Stalnaker-Hutchinson's liability carrier; (6) the jury improperly found Ray Pitts, Jr. guilty of 3% comparative fault; and, (7) if the jury intended to award $761,000, then the quantum award is inadequate, and Ray Pitts, Sr. and Rena Pitts should have been awarded a sum for loss of consortium.
Stalnaker-Hutchinson, the corporation that owned the lounge, answered the appeal, contending that the jury's allocation of 10% fault to it is manifestly erroneous. Farm Bureau, one of the Pitts' excess insurers, also answered, seeking a reduction in the quantum award for future loss of wages, and urging us to reduce the expert witness fee awarded to Dr. Vanda Davidson. Concordia Parish further answered the appeal, contending that the trial court erroneously made it pay advance costs because Concordia Parish requested that the opening and closing statements be transcribed.
On the day of argument in this court, DOTD was dismissed by plaintiff-appellant.

FACTS
This case centers on an automobile pedestrian accident which occurred at approximately 2:30 a.m. on June 29, 1984. Just prior to the accident Ray Pitts, Jr. was at Hutch's, a lounge in Vidalia, Louisiana. As Pitts left Hutch's, he observed Brenda Towles' automobile disabled off the road across from Hutch's. He went home to obtain his father's four-wheel drive truck which was equipped with a winch and returned to help Towles. Pitts parked the four-wheel drive truck in his lane of travel, partially on the road and partially on the shoulder. As Pitts was attempting to get into his truck to operate the winch, Terry Bailes, who was in a drunken condition, peeled out of Hutch's parking lot, fishtailing as he accelerated. Bailes' pickup truck struck Pitts and dragged him along his (Pitts') pickup truck.
Pitts, who was 20 years of age at the time of the accident, had his left leg amputated because of the injury Bailes inflicted. Pitts, together with his parents who asserted claims for loss of consortium, brought suit against Bailes; Bailes' father, Daniel Bailes, the owner of the truck; Stalnaker-Hutchinson and its sole shareholder, Howard Stalnaker; Timothy Hutchinson, the bartender who last served liquor to Bailes; Mutual Fire, Stalnaker-Hutchinson's insurer; State of Louisiana, Department of Transportation and Development, who overlaid the road in front of Hutch's; the Parish of Concordia, the owner of the road, and its insurers, General Agents Insurance Company of America and Western World Insurance Company; the insurers of Bailes, Southern Security Insurance Company and Hartford Insurance; and Hartford Insurance, the uninsured/underinsured carrier of Ray Pitts, Sr.; and, Pitts, Sr.'s excess insurance carriers, Louisiana Farm Bureau Mutual Insurance Company and Insurance Company of North America.
Farm Bureau and INA filed cross-claims against Terry Bailes, Stalnaker-Hutchinson, Inc. and Timothy Hutchinson. Other cross-claims and third-party demands were asserted between the various defendants, but since their resolution is immaterial to the issues presented herein, they will not be discussed.
Prior to trial the Pitts' dismissed their claims against Concordia Parish, reserving their rights against its insurers. All claims against the defendants, except that against the State, were tried by jury.
During the first week of trial, Hartford and Security settled the claims against them. Security paid its $5,000 policy limits, and Hartford paid its policy limits (under Ray Pitts, Sr. and Daniel L. Bailes' policies) of $525,000.
At the close of evidence the trial court dismissed plaintiffs' demands against Daniel L. Bailes, Howard Stalnaker, and Mutual Fire on motions for directed verdict.
The jury returned the following verdict:
"QUESTION NO. 1: Do you find that Terry Bailes
 was at fault, which fault was a
 legal cause of the accident?
 Yes X No___
*1369
QUESTION NO. 2: Do you find Stalnaker-Hutchinson,
 Inc. at fault, which fault
 was a legal cause of the accident?
 Yes X No___
QUESTION NO. 3: Do you find that Timothy
 Hutchinson was individually at
 fault, which fault was a legal
 cause of the accident?
 Yes X No___
QUESTION NO. 4: Do you find the Concordia Parish
 Police Jury at fault, which
 fault was a legal cause of the
 accident?
 Yes___ No X 
QUESTION NO. 5: Do you find the State of Louisiana,
 Department of Transportation
 & Development was
 at fault, which fault was a legal
 cause of the accident?
 Yes___ No X 
QUESTION NO. 6: Do you find that Ray Pitts, Jr.
 was at fault, which fault was a
 legal cause of the accident?
 Yes X No___
QUESTION NO. 7: Please assign the degree of
 fault of each party expressed
 as a percentage. Assign 0%
 fault to those parties who you
 fould [sic] were not at fault in
 causing the accident.
 NOTE: The total percentages
 of all fault must equal
 100%.
 Terry Bailes 72 %
 _______
 Stalnaker-Hutchinson,
 Ins. 10 %
 _______
 Timothy Hutchinson 15 %
 _______
 Concordia Parish
 Police Jury 0 %
 _______
 State of Louisiana,
 Department
 of Transportation 0 %
 _______
 Ray Pitts, Jr. 3 %
 _______
 Total: 100 %
 _______
NOTE: YOU MAY ENTER 0% FOR ANY PARTY,
 BUT THE TOTAL OF THE PERCENTAGES
 GIVEN IN YOUR ANSWER SHOULD
 EQUAL 100%.
QUESTION NO. 8: What amount of the following
 elements of damages is the
 plaintiff, Ray Pitts, Jr., entitled
 to recover? (Do not deduct
 from these damages any
 amount you feel has already
 been paid to the plaintiff in
 settlement or any percentage
 of fault, if any, you have assigned
 to Ray Pitts, Jr., in
 Question 7 above.)
Loss of earnings, past and future: $340,000.00
 ___________
Physical and Mental Pain and
Suffering, past and future: $200,000.00
 ___________
Medical Expenses, past and future: $158,500.00
 ___________
Permanent Disability and Disfigurement
past and future: $ 62,500.00
 ___________
Total: $761,000.00
 ___________
 * * *
QUESTION NO. 10: Do you find I.N.A.'s insurance
 policy issued to Louisiana
 Land, Inc., provided for this
 accident?
 Yes___ No X 
QUESTION NO. 11: Do you find I.N.A. violated the
 terms and conditions of Louisiana
 Revised Statutes 22, Section
 658 regarding uninsured
 motorist coverage?
 Yes___ No X 
QUESTION NO. 12: Do you find Farm Bureau violated
 the terms and conditions
 of Louisiana Revised Statutes
 22, Section 658 regarding uninsured
 motorist coverage?
 Yes___ No X 
 * * *
QUESTION NO. 14: What amount of damages, if
 any, is Mrs. Rena Pitts entitled
 to for loss of consortium with
 her son?
 $ 0
 __________________
QUESTION NO. 15: What amount of damages, if
 any, is Mr. Ray Pitts, Sr., entitled
 to for loss of consortium
 with his son?
 $ 0
 __________________

JURY MISCONDUCT
The Pitts contend that the trial court should have granted their post-verdict motion for a new trial because jury misconduct precluded the impartial administration of justice. They argue that one juror was not qualified because he had a felony conviction, and three other jurors exhibited bias and prejudice against the Pitts family in discussions prior to the jury's deliberations.
Peremptory grounds for granting a new trial in a jury case are present if it is shown that the jury was bribed or behaved improperly so that impartial justice has not been done. LSA-C.C.P. Art. 1972. Otherwise, the trial judge is granted wide discretion in allowing or denying the motion. LSA-C.C.P. Art. 1973.
In the first instance, the Pitts argue that the juror, Ike Washington, Jr., was untruthful during voir dire examination *1370 about the number of DWI convictions he had. We disagree. Upon examination by the trial court, Mr. Washington admitted that he had a DWI conviction during the previous fall. Neither the trial court nor any of the attorneys for the litigants explored Mr. Washington's admission to find out if he had more than one DWI conviction. In the absence of further questions, we cannot say that Mr. Washington lied on voir dire examination.
As an ancillary to their argument, the Pitts further contend that Mr. Washington was precluded from jury service because he had a felony conviction for DWI, third offense. In support of their argument, the Pitts attached an affidavit of a private investigator to show that the criminal records of Concordia Parish reflected DWI charges in 1981, 1985, and 1986. We find no merit to this contention. Even assuming the admissibility of the affidavits, which issue we shall treat next, the record does not indicate that Mr. Washington had a felony conviction. In 1986 Mr. Washington was charged with and pleaded guilty to a charge of DWI, second. In Louisiana DWI, second offense is not a felony.
As alluded to hereinabove, in support of their motion for a new trial the Pitts offered two affidavits of a private investigator attesting to his search of the criminal records (Mr. Washington's alleged improprieties) and his interviews of jurors about the pre-deliberation improprieties of other jurors. At the hearing on these post-trial motions, the trial court refused to grant a defense motion to strike the affidavits. The trial court erred in allowing the affidavits.
There is a well-settled rule which prohibits the admissibility of affidavits or other testimony of jurors to impeach their verdict. Lachney v. Jones, 373 So.2d 595 (La. App. 3rd Cir.1979), writ. denied, 376 So.2d 959 (La.1979). The reason for this rule is founded upon public policy to promote the jury's discovery of truth by preventing litigants from invading the privacy of the jury room. See Ryals v. Home Ins. Co., 410 So.2d 827 (La.App. 3rd Cir.1982), writs. denied, 414 So.2d 375, 376 (La.1982).
In their argument before the trial court, the Pitts relied upon Rains v. Diamond M. Co., 396 So.2d 306 (La.App. 3rd Cir.1981), writ. denied, 399 So.2d 623 (La.1981), cert. denied, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982), to support their right to rely on the affidavits. Rains recognized a narrow exception to the general rule which allows a court, when ruling on a motion for a new trial, to consider the affidavits and testimony of jurors concerning the truthfulness of their responses on voir dire examination. In the case sub judice, the Pitts presented no affidavits from the jurors. We are not prepared to extend the Rains `exception to the affidavit of a private investigator who has allegedly interviewed some of the jurors. Accordingly, though it did not affect the trial court's disposition of the post-trial motions, we find that the trial court should have granted the motion to strike the affidavits.
The Pitts further contend that one juror began discussing the case prior to deliberation, that two jurors discussed the social status of the Pitts, and that one juror commented on implications (adverse to Ray Pitts, Jr.) of testimony which was excluded. After carefully reviewing the record of the voir dire examination, in which it was brought out that two jurors were familiar with the Pitts, we cannot say that the trial court abused its discretion in denying their motion for new trial on this ground. Moreover, though the Pitts contend that the misconduct of the jury prejudiced them, the result of the polling of the jury is not transcribed. Accordingly, we are unable to say whether the jury vote was unanimous or not.
Thus, we find no merit to the Pitts' argument that they should have been granted a new trial because of jury misconduct.

ECONOMIST'S TESTIMONY: EVIDENTIARY RULING
The Pitts contend that the trial court should have also granted a new trial because the defendants' economist, Dr. Kenneth Boudreaux, testified about the impact of damage awards on insurance premiums, *1371 and his reference to social security disability benefits which may be available to Ray Pitts, Jr. as a collateral source of income.
It is axiomatic that a party may not complain of an evidentiary matter unless he objected to it in the trial court. LSA-C. C.P. Art. 1635.
In the present case, the Pitts contend that they were prejudiced by Dr. Boudreaux's comments that insurance premiums are increased to pay for damage awards. Though we are in agreement that such testimony is improper, the record not only is void of an objection to this testimony, but establishes that counsel for the Pitts initiated this line of questioning on cross-examination. Accordingly, this issue is not properly before us for appellate review.
The second evidentiary complaint is that Dr. Boudreaux improperly referred to social security disability as a collateral source of income which may be available to Ray Pitts, Jr. They argue that Dr. Boudreaux's reference to social security disability first appeared as an unresponsive answer to a question posed by counsel for Pitts.
A party may, by his acts or omissions, waive or be estopped to make objections to the admission or exclusion of evidence. Such waiver or estoppel may arise from failure to object, from acts done or omitted before the evidence is offered, as by failure to object to previous similar evidence, or from some affirmative act done after the ruling on the evidence. Hope v. Gordon, 186 La. 697, 173 So. 177 (1936).
In the present case, counsel for Pitts objected when Dr. Boudreaux began to answer unresponsively to his question regarding social security retirement benefits. Pitts' counsel further objected when the trial court allowed Dr. Boudreaux to answer defense counsel's questions about Ray Pitts, Jr.'s eligibility to receive social security disability benefits. Nevertheless, on recross-examination counsel for the Pitts, relying on veiled references to social security disability, completely questioned Dr. Boudreaux on this issue, and ultimately was able to get Dr. Boudreaux to admit in the presence of the jury that collateral sources of income should be disregarded in the assessment of damages for future loss of income.
We are convinced that Dr. Boudreaux's unresponsive testimony did not prejudice the Pitts.

QUANTUM: JURY CONFUSION
Ray Pitts, Jr. contends that the trial court should have either granted an additur or a new trial on the issue of damages. He argues that the jury was confused, and that it intended to grant him damages of $761,000 over and above the $530,000 settlement paid by Hartford and Security. We find no evidence of record to support the Pitts' contention.
The chronology of events are as follows: at the end of the first week of trial, the jury was informed that: (1) Hartford, the primary insurer of Daniel Bailes, Terry Bailes' father, and the uninsured/underinsured carrier for Ray Pitts, Sr., settled the lawsuit with the Pitts; (2) that the Hartford's uninsured motorist coverage was $500,000; and (3) that it was cautioned not to decide the remainder of the case until after all other evidence was presented.
At the conclusion of the presentation of evidence, INA and Farm Bureau orally amended their pleadings, with trial court approval and without objection from Pitts, allowing them a credit for any amount paid in settlement by Hartford.
Pitts first contends that the instructions given the jury concerning the settlement were confusing. Even though Pitts does not direct our attention to any particular jury instruction, we have examined the trial court's jury instructions and find that, though objections were made to those instructions, none of the objections were transcribed for inclusion in the appellate record.
A party may not assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict or immediately after the jury retires, stating specifically *1372 the matter to which he objects and the grounds for the objection. LSA-C.C.P. Art. 1793.
Under LSA-C.C.P. Arts. 2128 and 2129, the Pitts had the duty to designate the record on appeal. It is well-settled that if the record is deficient or incomplete, it must be assumed that the evidence missing from the record and not designated for consideration, supported the trial court's judgment. Field v. Merritt, 449 So.2d 7 (La.App. 1st Cir.1984), writ. denied, 450 So.2d 964 (La.1984); Johnson v. Berry Bros. Gen. Contractors, 405 So.2d 1234 (La.App. 1st Cir.1981), writ. denied, 410 So.2d 1135 (La.1982).
Applying this jurisprudence to the issue presented herein, we are presented with nothing to review.
In addition, we have looked closely at the trial court's statement in which he disclosed the settlement to the jury, the trial court's jury instructions, and the jury interrogatories. We find no support for the Pitts' position in the trial court's first announcement of the settlement to the jury. Likewise, in its jury instructions, the trial court repeatedly urged the jury to award damages which would fully and fairly compensate the plaintiffs for their injury, and did not address the settlement at all. Furthermore, the jury interrogatories specifically provide as follows:
"What amount of the following elements of damages is the plaintiff, Ray Pitts, Jr., entitled to recover? (Do not deduct from these damages any amount you feel has already been paid to the plaintiff in settlement or any percentage of fault, if any, you have assigned to Ray Pitts, Jr., in Question 7 above.)"
On this basis we cannot say that the trial court erred when it refused to either grant an additur or a new trial on the issue of damages.

LIABILITY OF CONCORDIA PARISH AND THE STATE OF LOUISIANA
Prior to trial, the Pitts dismissed their claims without prejudice against the Parish of Concordia, specifically reserving their right to proceed against General Agents and Western World, the parish's primary and excess liability carriers, respectively. Thus, the jury was the proper body to determine the question of the parish's liability vis-a-vis its insurers. On the other hand, the judge was the proper arbiter of the State's liability. Therefore, the jury determined that the parish was not liable and the judge, adopting the jury's response to a special interrogatory on the State's liability as provided in LSA-C.C.P. Art. 1812, absolved the State from liability.
On appeal, the Pitts contend that the trial court erred in denying their motion for JNOV or a new trial on the issue of the liability of the Parish of Concordia.
The Pitts argue that the road was defective because it was too narrow, it sloped, and it should have been signed with speed limit signs, substandard roadway signs or other warnings of the dangers of the road. One argument which was strenuously urged at trial, the failure to mark the road's centerline, is not urged on appeal.
Although LSA-C.C.P. Art. 1811 sets forth the rules governing a motion for judgment notwithstanding the verdict, the standard for granting a JNOV has developed jurisprudentially. In Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La.1986), the Supreme Court, quoting from Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969), stated:
"When `the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions [directed verdict and judgment n.o.v.] is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied ...'"
The standard for determining the propriety of granting a JNOV is the same as used to determine whether a directed verdict should be granted. Rougeau v. Commercial Union Ins. Co., 432 *1373 So.2d 1162 (La.App. 3rd Cir.), writ. denied, 437 So.2d 1149 (La.1983). In applying this standard, the court cannot weigh the evidence, pass on the credibility of the witnesses, or substitute its judgment of the facts for that of the jury. Id. at page 1166. Although credibility determinations and evaluation of evidence are reserved to the jury, where virtually no factual dispute exists, no credibility determinations by the jury are required. In such a circumstance, question of existence of a duty, violation of that duty by the defendant, and assumption of the risk or contributory negligence by the plaintiff are legal questions, and certainly within the province of the judge. Id. at page 1166. Simply stated, when there is no factual dispute, the judge is within his province in applying whatever law is applicable.
In reviewing a JNOV, we apply the manifest error rule to the judge's conclusions on liability and quantum. Robertson v. Penn, 472 So.2d 927 (La.App. 1st Cir. 1985), writ. denied, 476 So.2d 353 (La.1985).
A police jury may be liable in damages to persons injured because of its failure to keep its streets in a reasonably safe condition for travel. Pickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La.1975). However, a parish police jury is not the insurer of travelers upon its highways. The duty owed is to exercise reasonable care to keep these public ways in such condition that travelers who are prudent and ordinarily careful will not be exposed to injury. Id. Whether the parish police jury has breached its duty will depend upon the particular facts and circumstances of each case. Manasco v. Poplus, 530 So.2d 548 (La.1988).
The roadway in front of Hutch's is an old two lane levee road which was hard surfaced in 1974; Concordia Parish provided the material and DOTD performed the construction work. The roadway is not a major thoroughfare and when it was upgraded by the parish in 1974, Hutch's was not located there. The roadway is not marked with a centerline and no speed limit is designated. The roadway is generally 20 feet wide and at the approximate location of the accident the roadway was 19.2 feet wide. The roadway is canted approximately 4% from Hutch's to the north to a bean field located to the south. The shoulders were made of dirt and were generally wider on the north side.
John Blunschi was the investigating state trooper on the night of the accident, and at the time of trial he was recognized as an expert in the field of accident reconstruction. He determined that Terry Bailes exited Hutch's some 200 feet east of the accident site and estimated that Bailes was traveling 40 m.p.h. At the point where Bailes' pickup truck struck Pitts, Pitts was about 3-4 feet from the physical centerline in the proper lane of travel; thus Bailes had to cross the centerline to strike Pitts. Bailes struck Pitts, and dragged him along the length of Pitts' pickup truck; Pitts' pickup truck was thrown back almost 30 feet and Pitts' body was thrown almost 50 feet from the point of impact.
Blunschi located Bailes, who had retreated to Hutch's, and described him as being in an intoxicated condition. The Vidalia Police Department determined Bailes' blood/alcohol level as 0.15.
Blunschi opined that none of the road defects cited by the Pitts were instrumental in causing the accident. His final opinion was that Bailes, a wanton and recklessly intoxicated driver, was the cause of the accident.
Robert Lipp was qualified for the Pitts as an expert in the field of accident investigation, highway design, maintenance, and standards.
Lipp found that the road in front of Hutch's was too narrow, that the shoulders were inadequate, that the highway should have had a marked centerline, that the road should have been crowned, not sloped, and that there should have been stop signs at the three exits from Hutch's. He opined that these defects contributed to the accident and that the stop signs and centerline may have helped Bailes to avoid the accident even though Bailes was an intoxicated driver.
*1374 Dr. Olin Dart was qualified as an expert civil engineer, traffic engineer, and designer of highways. He opined that none of the road conditions cited by the Pitts were defective. He specifically found the shoulder on Bailes' side of the roadway provided as much as 14 feet to avoid the accident, and that even if the road conditions relied upon by the Pitts had defects, they did not contribute to the cause of the accident. He opined that the cause of the accident was Bailes' intoxicated condition which substantially contributed to his reckless behavior and his intrusion across the physical center of the roadway into Pitts.
Applying the standards enunciated hereinabove, we find that the trial court properly denied the Pitts' motion for JNOV as to the issue of Concordia Parish's liability, and further find that the jury properly concluded that Terry Bailes, not the defective highway, was the cause of the Pitts' damages.

LIABILITY OF STALNAKER-HUTCHINSON, INC.
Stalnaker-Hutchinson, Inc. answered the appeal, contending that the jury improperly found them 10% at fault.
The Supreme Court stated in Thrasher v. Leggett, 373 So.2d 494 (La.1979), a case in which an intoxicated patron sued a bar owner for damages he received in a fall on the premises, that an alcoholic beverage retailer is not absolutely liable for the consequences of a patron's intoxication. Nevertheless, the Supreme Court found in Thrasher that a duty of the bar owner under LSA-C.C. Arts. 2315 and 2316 is to avoid affirmative acts which increase the risk of peril to an intoxicated person. See also Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980).
In Leblanc v. Adams, 510 So.2d 678 (La. App. 4th Cir.1987), writ. denied, 514 So.2d 458 (La.1987), a case brought against a bar owner by a third party injured by an intoxicated patron's negligence, our brethren of the Fourth Circuit stated at page 683:
"These cases [Thrasher, supra; Sanders, supra] respectively hold that a bar owner and an employer-host are not responsible to anyone, whether the party who becomes intoxicated or a third person, for the acts of the intoxicated person to whom either the tavern owner or host provided alcohol, unless the provider performs an affirmative act which increases the peril posed by the condition of intoxication."
Stalnaker-Hutchinson's sole argument is that it performed no affirmative act which increased the peril posed by Terry Bailes' condition of intoxication. We disagree.
Terry Bailes testified that he had 3 or 4 drinks prior to his arrival at Hutch's at 10:00 p.m. He regularly frequented Hutch's and he ran a drink tab. Lois Maier, one of Hutch's bartenders, testified that Bailes' liquor bill for the evening was approximately $34, and that on the day following the accident, Tim Hutchinson, Hutch's manager, tore up Bailes' tab so that it would not be used as evidence.
Lois Maier testified that she told Bailes that she would not serve him any more liquor on the night of the accident because he was drunk and had caused a scuffle on the dance floor. She said he was rude and vulgar because of this. Despite her decision, Maier testified that Hutchinson and Danny Squires, another Hutch's employee, okayed more drinks for Bailes saying that another drink would calm him down. She later saw J.D. Martin, a bartender, serve Bailes another drink.
Sandra Dye, another waitress at Hutch's, said that just before closing the bar at 2:00 a.m., she told Bailes that he should not have another drink.
Both waitresses saw Bailes driving recklessly, doing donuts in the parking lot of Hutch's for about 1 to 2 minutes just prior to the accident. Both waitresses testified that although a large crowd was present at Hutch's that night to hear a special band, no one was hired to help control the crowd inside and direct traffic in Hutch's parking lot.
Under LSA-C.C. Art. 2315, the proper standard to determine whether a bar owner has breached its duty is whether its conduct *1375 was that generally required of a reasonable man under like circumstances. Thrasher, supra at 497.
Under these facts, we cannot say that the jury was manifestly erroneous in finding that Stalnaker-Hutchinson, Inc. performed affirmative acts which increased the risk of peril to third parties. Stalnaker-Hutchinson continued to serve Bailes intoxicants after two of its waitresses refused to do so because Bailes was drunk and rowdy. Furthermore, considering the large crowd drawn to the bar because of the special band, Stalnaker-Hutchinson owed a duty to have sufficient personnel available to secure the premises, including the parking lot. Thus we find no error in the jury's assessment of fault against Stalnaker-Hutchinson.

STALNAKER-HUTCHINSON'S LIABILITY CARRIER
The Pitts contend that the trial court erroneously dismissed Mutual Fire, the liability insurer of Stalnaker-Hutchinson, on a motion for directed verdict.
The Mutual Fire insurance policy provides as follows:
"Exclusions
This insurance does not apply:

* * * * * *
(h) to bodily injury or property damage for which the insured or his indemnitee may be held liable
(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or
(2) if not so engaged, as an owner or lessor of premises used for such purposes, if such liability is imposed
(i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or
(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;
but part (ii) of his exclusion does not apply with respect to liability of the insured or his indemnitee as an owner or lessor described in (2) above;"
The Pitts contend that (h)(2)(ii) is applicable and that the concluding phrase provides an exception to the exclusionary language. We disagree.
In Morrison on Behalf of Morrison v. Miller, 452 So.2d 390 (La.App. 3rd Cir. 1984), we stated:
"As a general rule, ambiguities in an insurance policy will not be interpreted in favor of the insurer. This rule, however, does not apply if the language of the policy is clearly unambiguous, for the court cannot disregard the `plain letter of the insurance contract' under the pretext of interpreting an ambiguity where none exists. Thomas v. Protective Life Insurance Company, 319 So.2d 878 [La. App.] (3rd Cir.1975)."
From the record presented, it is clear that Hutch's was "an organization engaged in the business of ... distributing, selling or serving alcoholic beverages ..." as described in (1) detailed hereinabove. The language of (h)(2) did not apply and thus the ultimate language of the exclusion which provided an exception to the exclusion was inapplicable. As such, the insurance contract specifically excluded coverage and the trial court properly granted Mutual Fire's motion for directed verdict.

CONTRIBUTORY NEGLIGENCE: RAY PITTS, JR.
Ray Pitts, Jr. next contends that the jury improperly cast him with 3% of the fault. We agree.
Defendants contend that the allocation of this small percentage of fault may be justified for several reasons: (1) Ray Pitts, Jr. was standing in the middle of the road, at night, without flares or other safety items; (2) Ray Pitts, Jr. should have been alerted to Bailes' approach; (3) Pitts could have pulled his truck further off the road; and, (4) Pitts had been drinking intoxicants.
A trier's findings as to percentages of fault are factual and, in the absence *1376 of clear or manifest error or an abuse of discretion, must be upheld on appeal. Triangle Trucking Co. v. Alexander, 451 So.2d 638 (La.App. 3rd Cir. 1984). The proper determination and apportionment of fault is based upon the degree of negligence attributable to the parties. Id. at 641. In the allocation of comparative fault, the trial court must consider both the nature and conduct of each party and the extent of causal relationship between the conduct and the damages. Attales v. Shelter Mut. Ins. Co., 488 So.2d 474 (La.App. 3rd Cir.1986). Contributory fault is never presumed but, as any other fact, must be proved by a preponderance of the evidence. Vidrine v. Government Employees Ins. Co., 528 So.2d 765 (La.App. 3rd Cir.), writ. denied, 532 So.2d 156 (La.1988). Accordingly, defendants had to prove their various allegations by a preponderance of the evidence, and that Ray Pitts, Jr.'s conduct was a cause in fact of the accident.
INA suggests halfheartedly in brief that Ray Pitts, Jr.'s senses were impaired at the time of the accident. The evidence does not so preponderate. Pitts and his girl friend were at Hutch's from 8:30 p.m. to 10:30 p.m. Pitts and his girl friend then left, and Pitts returned at 11:00 p.m., staying at Hutch's until 2:00 a.m. During the approximate 5 hours Pitts was at Hutch's, he drank 5 or 6 Budweisers. On this evidence we find no basis for the jury to conclude that Pitts' senses were impaired.
INA and Farm Bureau then contend that Ray Pitts, Jr. should have been alerted to Bailes' approach, and taken precautions by positioning his truck further off the road and using emergency flares.
During the early morning hours, Brenda Towles accidentally maneuvered her automobile onto the wet, grassy shoulder of the roadway which passes in front of Hutch's. Either voluntarily or upon request for assistance, Ray Pitts, Jr. decided to assist Towles. Pitts left Hutch's to go home, and returned with a four-wheel drive pickup truck equipped with a winch he intended to use to pull Towles' automobile onto the roadway.
Pitts parked his pickup truck with his lights illuminated in his lane of travel with his vehicle slightly slanted toward Towles' automobile. At trial, Pitts testified that he could not recall the exact position of his truck at the time of the accident. Originally he thought that only his right front tire was positioned off the road; later during trial he testified that perhaps both his right front and right rear tires were off the road.
Dr. Olin Dart and Robert Lipp testified that the roadway was more or less 19.2 feet wide at the approximate point of impact; thus, each lane of travel was 9.6 feet wide. Blunschi, the investigating officer and a qualified expert in accident reconstruction, placed Ray Pitts, Jr. at the time of the accident on his side of the roadway attempting to open the driver's door. According to Blunschi, Ray Pitts, Jr. was standing approximately 2 feet from the centerline of the roadway, and Bailes struck him in his (Pitts') lane of travel.
Although other witnesses to the accident testified that Bailes' vehicle was loud and noticeable as it entered the roadway approximately 200 feet from the accident site, Pitts testified that he neither heard nor saw Bailes approaching.
It is clear that Pitts was rendering aid to a stranded motorist at the time of the accident. Attempts to push the Towles' vehicle back onto the roadway had failed because of the position of her vehicle and the added problem of traction which the wet grass posed. Considering these circumstances, we cannot find that Pitts was negligent in positioning his pickup truck partially on the travel portion of the roadway to improve the traction his vehicle needed to properly winch Towles' automobile from the side of the road.
We likewise cannot fault Pitts for failing to use emergency flares or other safety items. The photographs depict Pitts vehicle as a large pickup truck and the evidence preponderates that Pitts' headlights were illuminated at the time of the accident.
There is no merit either to the argument that Pitts was at fault because he failed to *1377 hear and notice Bailes' approach. Pitts testified that his truck engine was running at the time of the accident, that his attention was focused on extricating Towles' vehicle from the roadside, and that he was busy at the time of the accident securing the winch mechanismall in his proper lane of travel.
Underlying our determination that the jury was clearly wrong under these circumstances in its determination that Pitts was partially at fault, is the question of causation. Pitts' actions did not cause this accident; the gross recklessness and intoxication of Bailes did. Bailes lost control of his vehicle 200 feet from the accident site, and crossed the physical centerline of the roadway. Bailes' senses were so impaired that he did not see Pitts or his illuminated vehicle. In fact, after the accident Bailes was not aware that he struck Pitts, and he did not even see Pitts' severely mangled and bloodied body in the roadway after the accident.
After carefully reviewing the evidence, we find the jury was clearly wrong in attributing 3% fault to Ray Pitts, Jr. Accordingly, we conclude that the defendants failed to prove that Pitts' various deficiencies in giving aid to Towles were contributing causes of the accident. Therefore we reverse the jury verdict to delete all fault assessed to Pitts.

QUANTUM
The Pitts contend that the various damage awards were inadequate. Farm Bureau answered the appeal, contending that the jury's award for future loss of wages was excessive.
Ray Pitts, Jr. contends that the jury's award of $158,000 for medical expenses was inadequate, arguing that more should have been awarded for future medicals. Past medical expenses were stipulated as $77,000. Thus, the jury awarded $81,000 for future medical expenses.
Future medical expenses must be established with some degree of certainty. Simmons v. Custom-Bilt Cabinet & Supply, 509 So.2d 663 (La.App. 3rd Cir.1987). Absent evidence of future medical expenses, no award can be made. Id. An award for future medical expenses cannot be based on mere speculation of the jury. Much stronger proof, such as medical testimony of the projected specific expenses, should be required for such an award. Sikes v. McLean Trucking Co., 383 So.2d 111 (La. App. 3rd Cir.1980).
Ray Pitts, Jr. first argues that the jury should have awarded him $350,000 for the replacement of his prosthesis every 13 years. In support of this item of damages, Pitts cites the testimony of Lee Roy Douglas. We have carefully examined the record and find that Douglas' testimony has not been transcribed for inclusion into the appellate record. As stated earlier, the appellant has the duty to designate the record. If the record is deficient or incomplete, it must be assumed that the missing evidence supported the trial court judgment. Field, supra; Johnson, supra.
At the time of trial, Pitts was not wearing his prosthesis and the evidence preponderates that Pitts felt more mobile using a cane or crutches. Thus, we cannot say that future medical expenses should have been awarded by the jury for this item.
Pitts next argues that the jury should have awarded $44,000 for future psychiatric care. The only supporting testimony relied upon by Pitts is that of Dr. Gerald Robertson. Again, Dr. Robertson's testimony was not transcribed and is not a part of the appellate record. We must assume, then, that Dr. Robertson's testimony supports the jury award. Moreover, Dr. Paul Ware, a psychiatrist, testified for the defense that Pitts was not clinically depressed and did not require future psychiatric care. Accordingly, we cannot say that the jury erred if it failed to make an award for this item.
Lastly, Pitts contends that the jury should have made an award for prescriptive medication and future surgery.
Although Pitts was continuing to take medication, the testimony is vague as to how often medication was taken and what the prognosis was for the future need for *1378 medication. In the absence of some definite testimony about how much medication would be required in the future or how much it would cost, we cannot say that the jury may have erred in not awarding this item. See Head v. St. Paul Fire & Marine Ins. Co., 408 So.2d 1174 (La.App. 3rd Cir.), writ. denied, 412 So.2d 99 (La.1982).
Pitts, without any specificity, argues that the record supports an award for possible future surgery. We disagree. The only treating physician whose testimony is in the appellate record is Dr. Vanda Davidson's. Dr. Davidson unequivocably stated that he did not recommend future surgery. Accordingly, we find no merit to Pitts' contention in this regard.
Therefore, after carefully reviewing the record, we cannot say that the jury erred in awarding $81,000 for future medical care.
Pitts next contends that the jury should have awarded more than $340,000 for loss of future earnings. He argues that the jury's reliance on his 1983 income was not reflective of his loss because of his youth and short work history.
In Freeman v. Harold Dickey Transport, Inc., 467 So.2d 194 (La.App. 3rd Cir. 1985), we stated:
"Future loss of earnings is speculative and can not be calculated with absolute certainty. Robinson v. Graves, 343 So.2d 147 (La.1977). Damages for loss of future earnings or loss of earning capacity is based on the injured person's ability to earn money, rather than on what he actually earned prior to the injury. Merrell v. State, Through Dept. of Transp., 415 So.2d 660 (La. App. 3rd Cir.1982), writ. denied, 420 So.2d 443 [La. 1982]; Folse v. Fakouri, 371 So.2d 1120 (La.1979). Actual earning capacity at the time of injury, although relevant, is not necessarily determinative of the injured person's future ability to earn. Green v. Farmers Ins. Co., 412 So.2d 1136 (La.App.2d Cir.1982); Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976). In computing wage loss it is proper to base the economic computation on gross income. Holmes v. Texaco, Inc., 422 So.2d 1302 (La.App. 5th Cir.1982); Lute v. City of Lake Charles, 394 So.2d 736 (La.App. 3rd Cir.1981).
Because of the speculative nature of an award for future loss of income there is no right formula in arriving at an award. Rather, the trial court must exercise sound discretion and award an amount that is fair to both litigants while not being unduly oppressive to either. Unbehagen v. Bollinger Workover, Inc., 411 So.2d 507 (La.App. 1st Cir.1982); Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968). In reaching an award for lost wages the trial court should consider the following factors: the injured party's age, life expectancy, work life expectancy, any discount rate and inflation factor which may be applicable, the annual wage rate increase, probable future earning capacity, and the loss of future earning ability and capacity. Unbehagen, supra; Rivers v. Schlumberger Well Surveying Corp., 389 So.2d 807 (La.App. 3rd Cir.1980)."
Donald W. Cornwell testified for Pitts and Kenneth Boudreaux for the defense. The major differences in the two economists' testimony revolved around what the proper basis was for the calculation of future economic loss.
Cornwell refused to use Pitts' 1983 income because of his short history of wage earnings. Accordingly, he used as his base a yearly income figure based on a national average for persons with Pitts' education and age. On this basis, he projected Pitts' future losses at approximately $700,000.
On the other hand, Boudreaux used Pitts' 1983 income, finding it comparable to farm income for this region, and projected Pitts' future loss of wages as approximately $290,000.
Pitts' argument on appeal is that Cornwell's approximation is more realistic because his intentions were to take over the family farming business piece by piece. However, we note there was no evidence introduced as to the earnings of the family business. In the alternative, he argues that even assuming that the use of 1983 income is appropriate, under Cornwell's calculations *1379 the lowest amount awardable was $394,712.64.
Farm Bureau answered the appeal, asking us to reduce the jury award for loss of income. Its argument is that the jury failed to reduce Pitts' future income by an amount to compensate for his future employment at an amount at least equivalent to minimum wage.
This item of damages presents a clear clashing of issues for which Canter v. Koehring Company, 283 So.2d 716 (La. 1973), and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), were meant. We have carefully examined the record and though we find that we may have awarded more than $340,000, we cannot say that the jury was manifestly erroneous in awarding such an amount.
Pitts next contends that the jury's awards of $200,000 for pain and suffering and $62,500 for permanent disability and disfigurement were inadequate.
In addressing the adequacy of the general damage award made to Pitts, counsel initiates his argument with a two page discussion of other awards for similar injuries. For this reason, we find it appropriate to repeat the holding of Reck v. Stevens, 373 So.2d 498, 501 (La.1979), which held:
"Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's `much3 discretion,' La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case.
In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited functionif indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) `similar' injuries, see Coco at 341 So.2d 334.
However, absent an initial determination that the trial court's very great discretion in the award of general damages has been abused under the facts of this case, the reviewing court should not disturb the trier's award. Wilson v. Magee, 367 So.2d 314 (La.1979)." (Footnote omitted.)
In the case sub judice, Ray Pitts, Jr., who was 20 years of age, and is 6 feet 8 inches tall, had his left leg almost completely severed at the site of the accident. Initial surgery attempted to save the left leg through valiant surgical intervention. Despite these efforts, Pitts' left leg had to be amputated just two inches below the groin. During Pitts' one month hospitalization, he received 74 units of blood and underwent 7 surgical operations.
Subsequent to his hospitalization, Ray Pitts underwent physical therapy and he was twice fitted with a prosthesis. The evidence graphically shows Pitts' difficulties dealing with the loss of his leg, his mood changes, and his painful attempts to walk using his prosthesis. Pitts has a permanent physical impairment to his left leg. In addition, because of the extreme shortness of his stump, it is difficult for Pitts to use his prosthesis and his stump becomes tender and sore from the abrasions.
Counsel for Pitts stresses that the jury overemphasized Pitts' failure to minimize his damages by adapting to the use of his prosthesis.
Although we agree with the trial court that we would probably have awarded a greater amount for this item of damages, *1380 we are mindful of the long line of jurisprudence which holds that an appellate court should not impose its appreciation of the evidence in the absence of an abuse of discretion on the part of the trier of fact.
We have carefully reviewed the evidence and find that although the jury award for general damages is on the low side, we cannot say that it is so low that it constitutes an abuse of discretion.
Rena Pitts and Ray Pitts, Sr., the parents of Ray Pitts, Jr., contend that the jury was manifestly erroneous in failing to make an award for loss of consortium.
Loss of consortium in regard to a major child has been interpreted jurisprudentially to encompass a parents' loss of aid, assistance, and companionship of the child. Worsham v. Walker, 498 So.2d 260 (La. App. 1st Cir.1986), writs. denied, 500 So.2d 423, 424 (La.1987). As with any other item of damages, a person has the burden of proving loss of consortium by a preponderance of the evidence.
We have carefully reviewed the testimonies of Ray Pitts' parents and find the record void of any proof of loss of aid, assistance, and companionship. The Pitts allege in brief that because of Ray Pitts, Jr.'s injuries, they will be deprived of his assistance when they approach their senior years. The Pitts were not querried about this in the appellate record, and we are precluded from considering evidence which appears for the first time in brief.
Therefore, we find that the jury did not err when it decided not to award Ray Pitts, Jr.'s parents an amount for loss of consortium.

EXPERT MEDICAL FEE
Farm Bureau answered the appeal, contending that the $750 expert fee set by the trial court for Dr. Vanda Davidson was excessive.
LSA-R.S. 13:3666, the expert witness fee statute, vests the trial court with discretion in fixing such fees, and the trial court's discretion will not be disturbed on appellate review absent an abuse of discretion. Comeaux v. Dairyland Ins. Co., 399 So.2d 802 (La.App. 3rd Cir.1981).
Farm Bureau argues that the trial court originally awarded Dr. Davidson an expert fee of $350, and increased that fee to $750 in the amended judgment (which reduced the Pitts' recovery by limiting Farm Bureau and INA to the difference between the settlement and the jury verdict.) Farm Bureau concedes that an expert witness fee may be set without a contradictory hearing. See Northwest Ins. Co. v. Borg-Warner Corp., 501 So.2d 1063 (La.App. 2nd Cir.1987).
The record shows that Dr. Davidson's office is in Alexandria. He was the only doctor who testified in person at the trial in Ferriday. After carefully reviewing the record, we cannot say that the trial court abused its discretion in fixing Dr. Davidson's fee.

COSTS FOR PREPARATION OF APPELLATE RECORD
Concordia Parish's insurer, General Agents, contends that the trial court erred when it made it pay $1,000 for transcribing opening and closing statements, for inclusion in the appellate record, even though it had not appealed.
LSA-C.C.P. Art. 2128 provides:
"The form and content of the record on appeal shall be in accordance with the rules of the appellate court, except as provided in the constitution. However, within three days, exclusive of holidays, after taking the appeal the appellant may designate in a writing filed with the trial court such portions of the record which he desires to constitute the record on appeal. Within five days, exclusive of holidays, after service of a copy of this designation on the other party, that party may also designate in a writing filed with the trial court such other portions of the record as he considers necessary. In such cases the clerk shall prepare the record on appeal as so directed, but a party or the trial court may cause to be filed thereafter any omitted portion of the record as a supplemental record. When no designation is made, the record *1381 shall be a transcript of all the proceedings as well as all documents filed in the trial court."
In civil cases the appellate court rules do not specifically provide for the inclusion of opening and closing statements. Nevertheless, Rule 2-1.17 of the Uniform Rules Courts of Appeal provides that, "Notwithstanding the foregoing requirements, the parties may designate in writing, portions of the record to constitute the record in a Court of Appeal."
Nowhere in the appellate record did the Pitts designate any portion of the record to be filed. Under this scenario, LSA-C.C.P. Art. 2128 provides that, "When no designation is made, the record shall be a transcript of all the proceedings ...." (Emphasis added.)
Based on the language cited from LSA-C.C.P. Art. 2128, we hold that since the Pitts did not designate the record in writing, opening and closing statements should have been included. In any event, we find that since the Pitts put at issue the fairness and impartiality of the trial, the opening and closing statements were properly included.
LSA-C.C.P. Art. 2126 mandates that the appellant shall pay the amount of the estimated costs. In the case sub judice, the trial court required Concordia Parish's insurer to pay the estimated additional cost of including the opening and closing arguments; these costs were paid in protest.
After carefully reviewing the applicable statutes and procedural articles, we find that the trial court erred when it required Concordia Parish's insurer, a non-appellant, to pay these costs. Instead, the trial court should have required the Pitts to advance these costs.
For the foregoing reasons, the judgment of the trial court is affirmed in all respects except as to the allocation of fault to Ray Pitts, Jr., and the trial court's order requiring Western World to pay the costs of transcribing and duplicating the opening and closing arguments.
IT IS ORDERED, ADJUDGED, AND DECREED that the jury verdict finding Ray Pitts, Jr. 3% at fault is reversed, and he is found free from fault.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the order requiring the Parish of Concordia and/or its insurer to advance the costs of $1,000 for the transcription and duplication of the opening and closing arguments is set aside, and this sum is hereby ordered refunded to them.
Costs of this appeal are assessed one-half to the Pitts and one-half to Farm Bureau and INA.
REVERSED IN PART; AFFIRMED IN PART; AND AFFIRMED AS AMENDED, AND RENDERED.